# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mohammed Abu Hanif,<br><br>Petitioner,<br><br>v.<br><br>Eric Rokosky, et al.,<br><br>Respondents. | No. CV-26-01732-PHX-SHD (ASB)<br><br>**ORDER** |

Petitioner filed this action under 28 U.S.C. § 2241 challenging his immigration detention. (Doc. 1.)  The Court issued an Order to Show Cause why the Petition should not be granted.  (Doc. 4.)  Upon review of the briefing and considering the length of Petitioner's detention—nearly two years—the Court will grant the Petition in part and order that Petitioner receive an individualized bond hearing within seven days.

## I.    BACKGROUND

Petitioner is a citizen of Bangladesh.  (Doc. 1 ¶ 11.)  On August 10, 2024, Petitioner entered the United States without inspection for the purpose of seeking asylum.  (*Id.* ¶ 20.) Petitioner was immediately taken into U.S. Department of Homeland Security ("DHS") custody.  (*Id.*)  Petitioner was charged as inadmissible under Immigration and Nationality Act ("INA")  §§ 212(a)(6)(A)(i)  and  212(a)(7)(A)(i)(I)—codified  at  8  U.S.C.

§§ 1182(a)(6)(A)(i)[1] and (a)(7)(A)(i)(I),[2] respectively.  (Doc. 1-1 at 5.)  Petitioner has remained in DHS custody in Eloy, Arizona since August 10, 2024.

An Immigration Judge granted Petitioner asylum on May 21, 2025.  (Doc. 1-1 at 19.)  DHS appealed that decision and the BIA remanded Petitioner's case to the Immigration Court for further proceedings.  (Doc. 1-1 at 24-26.)  On April 29, 2026, an Immigration Judge granted Petitioner asylum for a second time.  (Doc. 9, Ex. A.)  Petitioner was not released from DHS custody because the government again appealed the decision to the BIA.  (Doc. 10 at 1.)

Petitioner has never received an individualized bond hearing to determine whether his continued detention, now approaching two years, is justified. (Doc. 1 at ¶ 2.)  Petitioner seeks habeas relief on the basis that his continued detention without a bond hearing violates the Due Process Clause of the Fifth Amendment.  (*Id.* at ¶ 1.)

## II.   28 U.S.C. § 2241 WRIT OF HABEAS CORPUS

The district court is empowered to issue a writ of habeas corpus where an individual is held "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3).  The language of § 2241 and "the common-law history of the writ" make clear "that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (noting that the writ of habeas corpus "was early recognized by [the Supreme] Court as a 'great constitutional privilege'" (quoting *Ex parte Bollman*, 8 U.S. 75, 95 (1807))).  The Supreme Court has made clear that § 2241 applies to noncitizens challenging their immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

---

[1]   This provision states that a noncitizen "present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."  8 U.S.C. §1182(a)(6)(A)(i).

[2]   This provision states that an immigrant "who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 1181(a) of this title . . . is inadmissible."  8 U.S.C. §1182(a)(7)(A)(i)(I).

Because Petitioner only challenges his prolonged civil detention, the Court has jurisdiction to address the instant Petition. *See Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of the removal order[.]").

## III.   DISCUSSION

Petitioner asserts that his prolonged detention violates due process under the Fifth Amendment.[3]  (Doc. 1 at 7-13.)  Respondents have filed a Response.  (Doc. 6.)  In their Response, Respondents argue that "Petitioner is properly detained under Section 1225(b)(2)(A), which mandates his detention.  Petitioner is also not entitled to due process beyond what is prescribed by statute, and the case on which Petitioner relies has been overruled in the main by intervening Supreme Court precedent."  (Doc. 6 at 2-3.)

### A.   Statutory Basis for Petitioner's Detention and Due Process

Several statutes govern the government's ability to detain a noncitizen who is in removal proceedings.  "A noncitizen's place within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Avilez v. Garland*, 69 F.4th 525, 529 (9th Cir. 2023) (cleaned up).  There is no dispute Petitioner's detention is authorized by 8 U.S.C. § 1225(b)(2)(A).  The issue is whether Petitioner's prolonged detention without a bond hearing violates the Due Process clause.

The due process analysis proceeds in two steps:  First, the Court asks "whether there exists a liberty or property interest of which a person has been deprived." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).  If a deprivation has occurred, the Court proceeds to the second step and asks "whether the procedures followed by the [government] were

_____

[3]   Petitioner also challenges his detention on the ground that "his serious medical conditions make civil detention unreasonably dangerous and excessive" in violation of the Fifth Amendment.  (Doc. 1 at 14.)  Petitioner's second claim is not a cognizable ground for habeas corpus relief. *See Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on the circumstances of confinement may be presented in a [civil rights] action." (internal citation omitted)); *Pinson v. Carvajal*, 69 F.4th 1059, 1068–1069 (9th Cir. 2023).

constitutionally sufficient." *Id.*; *see also Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (holding that if a liberty interest exists, the court then determines whether the administrative procedures are sufficient considering the "particular situation" (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972))).[4]

### 1. Liberty Interest

"A liberty interest may arise from the Constitution itself . . . or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (internal citations omitted). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

There is no doubt that Petitioner has been deprived of a liberty interest—he has been imprisoned in Eloy, Arizona for almost two years. And the Supreme Court has consistently recognized that imprisonment is the quintessential deprivation under the Fifth Amendment. *See id*. Respondents maintain, however, that "because [Petitioner] is an arriving alien subject to the 'entry fiction,'" the Fifth Amendment's protections do not apply—that is, that Petitioner's detention is not a cognizable liberty interest because "he entered the United States illegally, was immediately detained, and was placed into expedited removal proceedings." (Doc. 6 at 2.) The Court declines to find that the entry fiction doctrine has any bearing upon Petitioner's as-applied challenge to his current immigration detention.

The entry fiction doctrine is based on the "distinction between those aliens who have come to our shores seeking admission, such as petitioner, and those who are within the United States after an entry, irrespective of its legality." *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). The Supreme Court has noted that the latter category of noncitizens has "additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Id.* (quoting *Shaughnessy v. U.S. ex rel. Mezei*, 345 U.S. 206, 212 (1953)). A noncitizen who is on the "threshold of initial entry" is not

---

[4] Due process is a flexible concept. This, however, "does not mean that judges are at large to apply it to any and all relationships. Its flexibility is in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure." *Morrissey*, 408 U.S. at 481.

considered "to have 'effected an entry'" because the executive branch has not exercised its "sovereign prerogative" "to admit or exclude" him. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) (quoting *Zadvydas*, 533 U.S. at 693). Put differently, "[w]hen an alien arrives at a port of entry—for example, an international airport—the alien is on U.S. soil, but the alien is not considered to have entered the country[.]" *Id.* at 139. Therefore, while a noncitizen may be physically present within the country, they are "still in theory of law at the boundary line and [have] gained no foothold in the United States." *Zadvydas*, 533 U.S. at 693 (quoting *Kaplan v. Tod*, 267 U.S. 228, 230 (1925)).

A noncitizen subject to the entry fiction doctrine has "only those rights *regarding admission* that Congress has provided by statute" and may not invoke the Fifth Amendment to seek further procedural protections concerning their efforts to gain admission into the country. *Thuraissigiam*, 591 U.S. at 139 (emphasis added); *see id.* ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." (quoting *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950))). Consistent with this principle, many courts in this district and its sister districts have held that the entry fiction doctrine applies only to the procedural rights of noncitizens regarding *admission* to the United States, not the entire universe of procedures occurring in the immigration context—*i.e.*, that the entry fiction doctrine is inapplicable to challenges to a petitioner's length of detention. *See D.V.D. v. U.S. Dep't of Homeland Sec.*, 2026 WL 521557, at *28–31 (D. Mass. Feb. 25, 2026)[5]; *see also Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) (holding that when a petitioner "do[es] not challenge the admission process in any way or assert a right to remain in the United States," the entry fiction doctrine is inapplicable).

In *D.V.D.*, the district court explained that in cases that provide an exception to the

---

[5] Although *D.V.D.* is an out-of-circuit decision that is currently stayed by the First Circuit, the Court is nonetheless persuaded by the analysis contained within *D.V.D.* Furthermore, other decisions within the District of Arizona have relied upon *D.V.D.* to grant release under the Due Process Clause. *Guevara Serrano v. Bondi*, No. CV-26-00110-PHX-DJH, Dkt. 15 at *3–4 (D. Ariz. Mar. 9, 2026).

otherwise "geographic" scope of the Due Process Clause, "the due process rights impacted are only those 'regarding admission.'"   *D.V.D.*, 2026 WL 521557, at *30 (quoting *Thuraissigiam*, 591 U.S. at 140).  "This distinction arises near the very inception of the entry-fiction case law: in *Wong Wing v. United States*, 163 U.S. 228 (1896), the Supreme Court contrasted the case of an immigrant who could not challenge his immigration officer's exclusive authority to determine whether a particular alien seeking admission into this country was so entitled, with another who could challenge, on due process grounds, the imposition of an immigration-related term of hard labor."  *D.V.D.*, 2026 WL 521557, at *30 (citation modified).  As *D.V.D.* elucidates, *Wong Wing* "presented the particularly egregious circumstance of an 'infamous punishment,'" but the Supreme Court "expressed its holding in terms of the broader protections afforded by the Due Process Clause:"

> Applying this reasoning to the fifth and sixth amendments, it must be concluded that all persons within the territory of the United States are entitled to the protection guarant[e]ed by those amendments, and that even aliens shall not be held to answer for a capital or other infamous crime, unless on a presentment or indictment of a grand jury, nor be deprived of life, liberty, or property without due process of law.

*Id.* (quoting *Wong Wing*, 163 U.S. at 238).  The *D.V.D.* court observed that "[i]t makes sense to distinguish between 'rights regarding admission' and other interests that might be protected by the Due Process Clause." *Id.* (citing *Thuraissigiam*, 591 U.S. at 140).

"The Government's countervailing interest, in the entry-fiction context, is its sovereign authority to 'admit [noncitizens] only in such cases  . . . as it may see fit.'" *Id.* (citation omitted).  "Where that sovereign prerogative is not implicated, however, the legal fiction loses its justification." *Id.* (citing *Zadvydas*, 533 U.S. at 699).  "Unsurprisingly then, more than a century of Supreme Court case law confirms that the proper application of an entry fiction, where otherwise appropriate, is to preserve the Government's authority over the determination of a noncitizen's *admissibility*."   *Id.* (collecting cases). Accordingly, when an immigration detainee challenges neither his order of removal nor any of the processes that produced that order, his claims "do not implicate, nor even 'relate[

] to,' the issue of [his] admissibility." *See id.* at *31 (citing *Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021)).

Here, Petitioner does not challenge an order of removal nor any of the process leading to such an order. Nor does Petitioner take issue with the procedures underlying his application for asylum. Rather, he seeks a bond hearing or release from detention, neither of which equates to admission into the United States. *See Rincon v. Hyde*, 810 F. Supp. 3d 101, 107 (D. Mass. 2025) (noting that, if a petitioner were released following a bond hearing, they "will be subject to the same removal proceedings as before, with no new right to remain"). "Thus, Petitioner does not purport to invoke any 'rights regarding admission.'" *Id.* at 110 (quoting *Thuraissigiam*, 591 U.S. at 140); *D.V.D.*, 2026 WL 521557, at *30. He is therefore a "'person[]' within the United States," and the Fifth Amendment "imposes constraints" on any process that deprives him of a protected liberty interest. *Id.*

Respondents would have the Court hold that the entry fiction doctrine is limitless and subsumes the general—and well-established—rule that the Fifth Amendment's protections extend to "all persons within the territory of the United States." *See Wong Wing*, 163 U.S. at 238. But the notion that arriving aliens are not held within the territory "is, of course, false." *Jennings v. Rodriguez*, 583 U.S. 281, 331 (2018) (Breyer, J., dissenting).[6] All noncitizens who are detained, but not formally admitted, "are held within the territory of the United States at an immigration detention facility." *Id.* And no matter "what we might pretend" in order to uphold the executive's sovereign prerogative to admit or exclude those noncitizens, "the Constitution does not authorize arbitrary detention." *Id.* ("No one can claim, nor since the time of slavery has anyone to my knowledge successfully claimed, that persons held within the United States are totally without constitutional protection."). If the Court were to interpret the entry fiction doctrine as broadly as Respondents request, "the Government [would] be free to starve, beat, or lash those held

---

[6] Although written in dissent, Justice Breyer's constitutional analysis was not contradicted by the *Jennings* majority, which did not reach the constitutional question. *See Jennings*, 583 U.S. at 312.

within our boundaries" without restraint. *Id.* This is not an interpretation that the Constitution—or the Supreme Court's precedent—contemplates. As Justice Breyer put it:

> [W]hatever the fiction, how can the Constitution authorize the Government to imprison arbitrarily those who, whatever we might pretend, are in reality right here in the United States? The answer is that the Constitution does not authorize arbitrary detention. And the reason that is so is simple: Freedom from arbitrary detention is as ancient and important a right as any found within the Constitution's boundaries.

*Id.*

Narrow application of the entry fiction doctrine is also consistent with myriad precedent in a multitude of ways. It is consistent, for example, with the Supreme Court's decision in *Zadvydas*, which held that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." 533 U.S. at 690. The Ninth Circuit reiterated this point in *Rodriguez v. Marin*, stating:

> We have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so. Arbitrary civil detention is not a feature of our American government.

909 F.3d 252, 256 (9th Cir. 2018). For these reasons, the Court rejects the application of the entry fiction doctrine in this context.

Because Petitioner has identified the deprivation of a protected liberty interest—his prolonged detention—the Court proceeds to the next step of the due process analysis: what procedures, if any, is Petitioner entitled to.

**2.      Due Process Rights Regarding Petitioner's Prolonged Detention**

Courts in this circuit and beyond have grappled with what test should be used to determine whether procedural due process requires relief for a noncitizen held pursuant to § 1225(b). *See Doe v. Andrews*, 2026 WL 797694, at *9–10 (E.D. Cal. Mar. 23, 2026) (applying the three-factor test set forth in *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022)); *see also Galkin v. Scott*, 2026 WL 632663, at *2–3 (W.D. Wash. Mar. 6, 2026) (applying the six-part test from *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D.

Wash. 2019)); *Leonteva v. Noem*, 2026 WL 711766, at *8 (S.D. Ind. Mar. 13, 2026) (applying the same six-factor test, but calling it the *Jamal A.* test based on *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019)); *L.S. v. Warden, Otay Mesa Det. Ctr.*, 2026 WL 143150, at *5–6 (S.D. Cal. Jan. 20, 2026) (applying the three-part *Mathews* test).

Out of the abovementioned tests, the Court finds the *Banda* test the most applicable to the circumstances of this matter. Under *Banda*, the Court considers the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Banda*, 385 F. Supp. 3d at 1117.

The Court finds the *Banda* test more suitable than the *Mathews*[7] and *Lopez*[8] tests. Regarding the *Mathews* test, the Court concurs with other district courts that have found that "while the *Mathews* factors may be well-suited to determining whether due process requires a second bond hearing, they are not particularly dispositive of whether prolonged mandatory detention has become unreasonable in a particular case." *Lopez*, 631 F. Supp. 3d at 879. Put differently, the *Mathews* test is apt where the question is whether an

---

[7] Under the *Mathews* test, the Court considers:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

[8] Under the *Lopez* test, "the Court will look to the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government." *Lopez*, 631 F. Supp. 3d at 879. The Court notes that this test "concern[s] due process challenge[s] to mandatory detention under § 1226(c), [and is], in essence, a truncated version of the factors enumerated in *Banda*[.]" *Andrews*, 2026 WL 797694, at *10. Because the six-factor *Banda* test is more detailed than *Lopez* and is better suited for noncitizens held under § 1225(b), the Court will apply it.

- 9 -

administrative procedure provided is "constitutionally sufficient," but "[i]t does not resolve the more fundamental issue of whether any procedure—such as a bond hearing—must be provided."[9]  *Banda*, 385 F. Supp. 3d at 1106–07.

a.  <u>Length of Detention</u>

The first *Banda* factor is the length of detention, "which is the most important factor." *Banda*, 385 F. Supp. 3d at 1118.  "It is important to bear in mind the context:  The detention that is being examined here is the detention of a human being who has never been found to pose a danger to the community or to be likely to flee if released." *Id.* (quoting *Jamal A.*, 358 F. Supp. 3d at 859).  When a petitioner's detention exceeds a six-month threshold their "detention[] become[s] less and less reasonable." *Haidari v. Immigr. & Customs Enf't Field Off. Dir.*, 2026 WL 764689, at *3 (W.D. Wash. Mar. 18, 2026) (quoting *L.B.O.M. v. Hermosillo*, 2026 WL 266068, at *3 (W.D. Wash. Feb. 2, 2026)).

---

[9]  In any event, the outcome under *Mathews* would be the same—*i.e.*, Petitioner would be entitled to an individualized bond hearing.  Applying the first *Mathews* element, the Court finds that Petitioner has a strong private interest in his liberty from prolonged civil detention. *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) ("As to the first factor, the private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" (quoting *Foucha*, 504 U.S. at 80)).

Turning to the second *Mathews* element, considering the prolonged nature of Petitioner's detention, the Court finds a large risk of erroneous deprivation in the absence of an individualized bond hearing. *See Rodriguez v. Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013) (noting that the discretionary parole system envisioned under the Immigration and Nationality Act is insufficient "to overcome the constitutional concerns raised by prolonged mandatory detention").  Hence, an individualized bond hearing would greatly mitigate the risk of a continued constitutional violation.

Finally, regarding the third *Mathews* factor, the Government interest in detaining Petitioner without an individualized bond hearing is low.  First, "[p]roviding petitioner with a bond hearing would not impede respondents' interest in effecting removal or protecting the public, as the purpose of the bond hearing is to determine whether petitioner is a danger or flight risk." *Jensen v. Garland*, 2023 WL 3246522, at *6 (C.D. Cal. May 3, 2023). Second, the fiscal burden of providing an individualized bond hearing is low. *See Abduraimov v. Andrews*, 2025 WL 2912307, at *7 (E.D. Cal. Oct. 14, 2025) ("Courts generally have found that the cost of providing a bond hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a bond hearing would be fiscally or administratively burdensome."); *cf. Hernandez*, 872 F.3d at 996 (noting that "[t]he costs to the public of immigration detention are 'staggering': $158 each day per detainee, amounting to a total daily cost of $6.5 million. Supervised release programs cost much less by comparison: between 17 cents and 17 dollars each day per person").  Therefore, the third factor minimally favors the Government.  Accordingly, applying the *Mathews* test to Petitioner's nearly two-year detention, the Court concludes that due process requires he be provided with an individualized bond hearing.

- 10 -

Petitioner has been held in DHS custody for nearly two years.  His detention is well beyond the six-month threshold, and well beyond the length of confinement other courts have found to be prolonged.  *See, e.g.*, *Ding v. Noem*, 2026 WL 776029, at \*2 (E.D. Cal. Mar. 19, 2026) (noting that an eight-month detention is sufficiently prolonged to warrant granting relief); *Amado v. U.S. Dep't of Just.*, 2025 WL 3079052, at \*5 (S.D. Cal. Nov. 4, 2025) ("To date, [p]etitioner has been in detention for approximately thirteen months. Courts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable."); *Kadir v. Larose*, 2025 WL 2932654, at \*5 (S.D. Cal. Oct. 15, 2025) (noting that 13 months without a bond hearing is prolonged); *cf. Banda*, 385 F. Supp. 3d at 1118 ("Petitioner has been in detention for approximately 17 months, which is a very long time.").  In light of these decisions, and based on the facts of the instant action, the Court finds the length of Petitioner's detention strongly favors granting relief.

### b.    Likely Duration of Future Detention

The second factor requires the Court to "consider[] how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings—including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted).  "When the alien's removal proceedings are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable." *Akmal v. Warden of Cal. City Det.*, 2026 WL 657606, at \*7 (E.D. Cal. Mar. 9, 2026) (quoting *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 211 (3d Cir. 2020)).

While the length of future detention is uncertain considering Respondents' appeal of Petitioner's asylum grant, the Court finds that the likely duration of future detention is sufficiently lengthy for this factor to favor Petitioner.  *See Chekhovskii v. Scott*, 2026 WL 353265, at \*4 (W.D. Wash. Feb. 9, 2026) (finding the second *Banda* factor favored a petitioner who filed an appeal before the Ninth Circuit Court of Appeals because, "based on the current record, it appears likely [that the] petitioner [would] face many more months and potentially years in detention"); *see also Kadir*, 2025 WL 2932654, at \*5 ("Petitioner's

future detention can last several more months or even years during the adjudication of Respondents' appeal to the BIA."); *Ding*, 2026 WL 776029, at *2 ("[E]ither party may seek Ninth Circuit review of the [BIA's] decision. Therefore, [p]etitioner faces indefinitely prolonged detention while administrative and potentially judicial appeals of his removal order are decided. Thus, this factor weighs in [p]etitioner's favor.").

### c.      Conditions of Detention

The third factor requires the Court to consider the conditions of confinement. *Banda*, 385 F. Supp. 3d at 1119. "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Id.* (citation omitted).   Petitioner has introduced extensive evidence regarding the effect of his confinement on his health.  And while Respondents are correct that Petitioner cannot challenge the conditions of his confinement in this habeas corpus action, those conditions are relevant to whether his detention is unconstitutionally prolonged.  The Court finds this factor also favors Petitioner.

### d.      Delays in Removal Proceedings

Next, the Court shall analyze the "fourth and fifth [*Banda*] factors—both of which consider delays caused by the parties—together." *Maliwat v. Scott*, 2025 WL 2256711, at *6 (W.D. Wash. Aug. 7, 2025).

The fourth factor requires the Court to consider the nature and extent of any delays caused by Petitioner.  "Courts should be sensitive to the possibility that dilatory tactics by the removable noncitizen may serve not only to put off the final day of deportation, but also to compel a determination that the noncitizen must be released because of the length of his incarceration." *Banda*, 385 F. Supp. 3d at 1119 (cleaned up).

Conversely, the fifth factor considers the delays in removal caused by the Government. *Banda*, 385 F. Supp. 3d at 1120. "[I]f immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable . . . Continued detention will also appear more unreasonable when the delay in proceedings was caused by the immigration court or other non-ICE government officials." *Galkin*, 2026 WL

632663, at *4 (quoting *Sajous v. Decker*, 2018 WL 2357266, at *10–11 (S.D.N.Y. May 23, 2018)).

Here, Petitioner has caused no delay to this process.  Rather, the Government has twice appealed Petitioner's asylum grant and has prolonged his detention.  Further, the Court notes that "any delay in this case is a product of the BIA's and Ninth Circuit's crowded dockets, which courts typically attribute to the Government—not the Petitioner." *Galkin*, 2026 WL 632663, at *4  (quoting *Djelassi v. ICE Field Off. Dir.*, 434 F. Supp. 3d 917, 923 (W.D. Wash. 2020)).  Hence, the fourth and fifth factors favor Petitioner.

### e.    Likelihood of Removal

The final *Banda* factor requires the Court to consider "the likelihood that the final proceedings will culminate in a final order of removal."  *Banda*, 385 F. Supp. 3d at 1120 (citation omitted).  "[W]here a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'"  *Id.* (quoting *Sajous*, 2018 WL 2357266, at *11).  Petitioner has twice been granted asylum by the immigration courts, and the Court finds this factor favors Petitioner.

### f.    Conclusion

All six *Banda* factors favor Petitioner.  The Court therefore finds that Petitioner's continued detention under § 1225(b)(2) has become unreasonable.  Petitioner is entitled to relief.

## IV.    REMEDY

Where a noncitizen's detention under § 1225(b)(2) has become unreasonably prolonged, the proper remedy is an individualized bond hearing before a neutral IJ.  *See Galkin*, 2026 WL 632663, at *4; *see also Lopez*, 631 F. Supp. 3d at 882 ("The Court finds, consistent with other post-*Jennings* cases, that the appropriate remedy is a bond hearing before an immigration judge rather than immediate release."); *Kaur v. Lyons*, 2026 WL 963792, at *1 (D. Ariz. Apr. 9, 2026) (adopting the magistrate judge's recommendations for a § 1225(b)(2) petitioner and granting a bond hearing).

At the bond hearing, Respondents bear the burden of proving that Petitioner is a

danger or flight risk by clear and convincing evidence. *Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011). Additionally, "[i]n the event Petitioner is 'determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond,' the Immigration Judge should consider Petitioner's financial circumstances and alternative conditions of release." *See also Ding*, 2026 WL 776029, at *3 (quoting *Hernandez*, 872 F.3d at 1000).

Accordingly,

**IT IS THEREFORE ORDERED** that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** as to Ground One and Petitioner's request for an individualized bond hearing and is otherwise **DENIED** as to Ground Two.

**IT IS FURTHER ORDERED** that a bond hearing shall be held within **SEVEN (7) CALENDAR DAYS** of this order, unless Petitioner requests a continuance of the bond hearing, in which case Respondents may seek an extension of time to comply with the Court's Order.

1. Petitioner must be given at least two days' notice of the bond hearing and the bond hearing shall comport with the procedural requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). There must be a contemporaneous record of the hearing, and the ***GOVERNMENT BEARS THE BURDEN*** of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community; or

2. In the alternative, the Government shall immediately release Petitioner under appropriate conditions of release.

**IT IS FURTHER ORDERED** that **within 7 calendar days** after the bond hearing or Petitioner's release, the parties shall file a joint status report as to Petitioner's detention and, if applicable, the result of the bond hearing.

///

///

///

- 14 -

**IT IS FURTHER ORDERED** that all other motions are denied as moot.  The Clerk of Court is directed to enter judgment in Petitioner's favor and terminate this action.

Dated this 28th day of July, 2026.

Honorable Sharad H. Desai
United States District Judge